**Michael SMITH, Plaintiff,**

v.

**CENTRAL SECURITY BUREAU, INC., and James Rowe, Defendants.**

**No. CIV.A.5:00–CV–00057.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Nov. 6, 2002.

Lauren Clingan, Hammer, Ferretti & Schiavoni, Martinsburg, WV, for plaintiff.

Dana R. Cormier, Thomas E. Ullrich, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, for defendants.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

This matter comes before the court on the parties' May 1, 2002 cross motions for summary judgment and the defendants' "Motion for Default Judgment With Respect to Opt-in Plaintiffs," filed July 15, 2002. The above-captioned civil action was referred to the presiding United States Magistrate Judge for proposed findings of fact, conclusions of law, and a recommended disposition. *See* U.S.C. § 636(b)(1)(B). In his August 21, 2002 Report and Recommendation, Magistrate Judge B. Waugh Crigler rendered to this court a report setting forth findings, conclusions, and recommendations for the disposition of the aforementioned filings. The defendants filed timely objections to

portions of the Magistrate's Report and Recommendation. The plaintiff, in turn, filed a timely response to the defendants' objections.

The court has performed a *de novo* review of those portions of the Report and Recommendation to which objections were made. *See* U.S.C. § 636(b)(1)(C) (West 1993 and Supp.2000); FED.R.CIV.P. 72(b). Having thoroughly considered the entire case, all relevant law, and for the reasons stated herein, the court shall GRANT the plaintiff's Motion for Partial Summary Judgment (on issues of liability); DENY the defendants' Motion for Summary Judgment; GRANT, IN PART, the defendants' Motion for Default Judgment and DISMISS the claims of opt-in plaintiffs McCormick, Brandon, Domagala, Lawrence, and Hinton, but DENY the Motion for Default Judgment in all other respects, and ACCEPT the Report and Recommendation of the Magistrate Judge.

## I.

The court will rely on the Magistrate Judge's recitation of the facts involved in this matter. In brief, this is an action in which the plaintiff alleges that his employer failed to pay overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff Michael Smith initiated the above-captioned civil action on June 29, 2000, *"individually and on behalf of all current or former employees* of Defendant Central Security Bureau, Inc. ('CSB') who acted as 'Field Supervisors.'"* Complaint at 1 (emphasis added). Neither before nor after this case was certified as a collective action did Smith file a consent form expressing his willingness to join as a party plaintiff in this action. The defendants, in their November 8, 2000 answer to the original complaint, contested whether the case could be brought as a collective action. Then, on April 19, 2001, the presiding Magistrate Judge granted the Plaintiff's Motion to Compel Production of a Putative Class List, and set a discovery and motions deadline for resolution of whether the case could proceed as a collective action. The defendants objected to the Magistrate's ruling and asked him to reconsider. On May 31, 2001, the Magistrate Judge granted the motion for reconsideration, allowing class-related discovery to move forward, but restricting production of evidence to anonymous salary information regarding "Field Supervisors."

On February 19, 2002, after conducting a hearing earlier in the month, the Magistrate Judge granted the motion to certify the collective action, relying, in part, on the deposition testimony of CSB's corporate representative. That evidence revealed that Michael Smith was "similarly situated" to the other Field Supervisors in both duties and methods of compensation. Soon thereafter, thirteen plaintiffs opted into the collective action by filing consents to join the action. Plaintiff Smith filed his consent, or "opt-in" form, on May 14, 2002.

Both parties filed motions for summary judgment on May 1, 2002. After these pleadings were filed, but before the responses were due, the Magistrate Judge granted the plaintiff's Motion to Reopen Discovery on three discrete issues: (1) information relevant to the "window of correction" defense raised by the defendants in their dispositive motion papers; (2) evidence affecting the statute of limitations defense against the opt-in plaintiffs; and (3) damages allegedly suffered by the opt-in plaintiffs.

Then, on July 15, 2002, the two sides each filed their respective responses to the May 1, 2002 motions for summary judgment. Additionally, the defendants filed a motion seeking entry of default and for default judgment against all thirteen opt-in plaintiffs for their alleged failures to cooperate in discovery after opting into the

collective action. After hearing argument on these motions, the Magistrate Judge entered his August 21, 2002 Report and Recommendation.

## II.

Before this court can adequately address the merits of the motions now before it, it is first necessary to review the underlying factual background of this matter. On June 17, 1999, plaintiff Michael Smith accepted a promotion to the position of "Field Supervisor" with defendant Central Security Bureau, Inc. ("CSB").[1] At the time Smith accepted the promotion, he signed an employment contract that denominated the position as "salaried," but which fixed the terms of his pay at an hourly rate of $6.50. Smith was also given a copy of CSB's employment policy, which, in pertinent part, provided that "[s]alaried employees are expected to work forty (40) hours each week. If you do not, you will only receive compensation for the hours you work. The state labor law says 'NO WORK; NO PAY.'" Pl.'s Mot. for Part. Summ. J. Ex. 5 (emphasis in original).

While the plaintiff often worked well in excess of forty hours per week,[2] Smith, on two occasions, worked less than the requisite forty hours in a week. From June 25, 1999 through July 8, 1999, the plaintiff worked seventy-nine hours and from January 8, 2000 through January 20, 2000, Smith worked thirty-nine hours. On both occasions Smith's pay was docked exactly $6.50 for each hour under forty not worked. During the aforementioned pay periods, Smith was paid $6.50 per hour of work, which was the rate of pay set forth in his employment contract.

Additionally, the evidence reveals that while the predominance of the other opt-in plaintiffs never worked less than forty hours in any given week, at least one other former opt-in plaintiff experienced similar deductions for what are known in this action as "partial-day absences." Robert Ennis[3] was hired at a weekly "salary," as the defendants denominate the compensation, of $560, calculated at the rate of $7 per hour multiplied by forty hours. Ennis was paid $553 instead of his "salary" of $560, which reflected a deduction of $7.00 for the one hour he fell short of forty hours for that pay period. Moreover, during the pay period of May 28, 1999 through June 10, 1999, Ennis worked a total of seventy-eight and one half hours. Consequently, he was paid $549.50, again reflecting a deduction of $7.00 for the one and one half hours Ennis fell short of the forty hour minimum. There is no evidence in the record establishing that any Field Supervisor who experienced "partial-day absences" ever actually received a full salary as if he or she had worked the entire forty-hour week.

## III.

On May 1, 2002, the parties filed cross motions for summary judgment. A party is entitled to summary judgment when the pleadings and discovery show that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *Anderson v. Liberty Lob-*

---

1. Defendant James Rowe is the founder and president of CSB.

2. For instance, in the two-week pay period from October 15, 1999 to October 28, 1999, Smith worked one hundred eighty-six hours. In the following two-week period he worked two hundred hours.

3. It is worthy of note that by court order dated September 5, 2002, and pursuant to his request, Robert Ennis's claim was dismissed from this action.

*by, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[S]ummary judgment … is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir.2000) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). If the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, then there are genuine issues of material fact. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. All facts and inferences shall be drawn in the light most favorable to the non-moving party. *See Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 227 (4th Cir.2000). Guided by these principles, the Magistrate Judge recommends that this court grant the plaintiff's Motion for Partial Summary Judgment (on issues of liability) and deny the defendants' Motion for Summary Judgment in every respect.

## IV.

A. Objection 1—*Whether Plaintiff Smith may Proceed Simultaneously in Individual and Collective Capacities:*

■ Defendant CSB has articulated three objections to the Magistrate Judge's Report and Recommendation. First, defendant CSB objects to the Magistrate's "recommendation that Smith may proceed simultaneously in individual and collective capacities." Defendants' Objections, page 2. In order to address the defendants' objection, the court must first consider the statute under which the plaintiff initiated the present action.

The FLSA allows employees to initiate legal actions for themselves and on behalf of similarly situated others. Specifically, the statute authorizes "one or more employees" to initiate suit "for and in behalf of himself *or* themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). While it is clear that the FLSA contemplates both individual and collective actions, the defendants maintain that when Smith's motion to certify the case as a collective action was granted, his individual claim was supplanted by the collective action. According to CSB, therefore, the plaintiff cannot proceed simultaneously in individual and collective capacities.

Unfortunately, as the Magistrate Judge notes, there is little guiding decisional authority in the circuits, let alone in the Fourth Circuit, pertaining directly to the circumstances currently before the court. Although the Fourth Circuit has never expressly held that a plaintiff may bring an action in such dual and individual capacities, it is also true that the court has never foreclosed such a possibility, despite multiple opportunities to do so.

First, in *Lee v. Vance Executive Protection, Inc.*, 7 Fed. Appx. 160 (4th Cir.2001) (unpublished), the court held that when multiple plaintiffs attempt to set forth the capacity in which the suit is brought by precisely copying the statutory language, the complaint is to be construed as one pleading a collective action and not separate individual actions brought by multiple plaintiffs under the FLSA. After discussing the case in detail, the Magistrate Judge noted that the principle difference between *Lee* and the case at bar is that Smith, the named plaintiff in the present matter, "did not employ merely the statutory language interpreted in *Lee* to plead the capacities in which he was instituting the case." Report and Recommendation, page 16. Instead, Smith instituted the case "individually and on behalf of others."

The defendants contend that while Smith may not have precisely copied the statutory language, his "pleading parallels the statutory definition of a collective action under the FLSA, though he did not reiterate the statutory language." Defen-

dants' Objections, page 15. Put differently, CSB argues that the variance between Smith's pleadings and the statutory language is a difference without a distinction.

Although Smith's pleading was similar to the statutory language pled in the complaint at issue in *Lee*, which the court construed as one pleading a collective action, it is not identical. A logical inference from Smith's failure to copy precisely the statutory language of the FLSA in his complaint, coupled with the seemingly unambiguous language employed by the plaintiff, is that Smith was attempting to avoid the result reached in *Lee*. Put differently, and contrary to the defendants' contention, Smith wanted to make clear the dual capacities in which he was bringing the case. The plaintiff, therefore, stated that he was instituting the action "individually *and* on behalf of [others]." Complaint, page 1 (emphasis added).

██ The defendants, however, cite to *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir.1996) for the proposition that "[u]nder the most basic canon of statutory construction, [a court] begin[s] interpreting a statute by examining the literal and plain language of the statute." The same proposition applies to a court's construction of a party's filings—a court begins interpreting a pleading by examining the literal and plain language of that pleading. Here, Smith instituted the action "individually and on behalf of others." The plain language of the aforementioned language is open only to one interpretation, namely, that Smith was attempting to proceed in a dual capacity. If the complaint does not indicate Smith's intent to proceed in a dual capacity, the court is at a loss to understand how the plaintiff could have obtained such a result.

Although Smith unambiguously stated his intent to proceed in a dual capacity, the inquiry is not over. The court next must discern if one is permitted to plead simultaneously both individually and collectively. As noted earlier, although the Fourth Circuit has never expressly held that an FLSA plaintiff may plead in a dual capacity, it has also never foreclosed the possibility. Notwithstanding the *Lee* decision, the Fourth Circuit came closest to disclosing its position on the aforementioned issue in *In re Food Lion, Inc.*, 151 F.3d 1029, 1998 WL 322682 (4th Cir.1998) (unpublished).

Not unlike the *Lee* court, the *Food Lion* court made an effort to discern from the pleadings whether the plaintiffs had brought individual cases. A careful reading of *Food Lion* leads the court to the same conclusion reached by the Magistrate Judge. Namely, that the court suggests that "where the record reveals an intent to file an individual claim, and the individual claim is timely filed, it should be allowed to continue, notwithstanding the individual plaintiff's failure to timely file a consent to join the collective action." Report and Recommendation, page 19. Here, the record clearly reveals plaintiff Smith's intent to proceed in a dual capacity.

In their papers, the defendants contend that the Magistrate Judge "construes two Fourth Circuit decisions to allow dual capacity suits based upon what those decisions did *not* hold." Defendants' Objections, page 15. This is certainly true. It is also true, however, as noted above, that the Fourth Circuit never expressly foreclosed the possibility that a plaintiff or group of plaintiffs could bring an action in such dual individual and collective capacities, so long as the complaint clearly put the employer and the court on notice of such. Given the Fourth Circuit's reluctance to foreclose such a possibility, the Magistrate Judge explained that "far be it for [the Magistrate] to take the view that dual capacity actions are foreclosed." Report and Recommendation, pages 17–18. The same holds true for this court. The court will not do what the Fourth Circuit,

despite multiple opportunities, has not done. The defendants' first objection to the Report and Recommendation, therefore, shall be OVERRULED.

### B. Objection 2—*The Willfulness of the Alleged FLSA Violation:*

■ CSB's second objection to the Magistrate Judge's filing is that "[c]ontrary to the Report's recommendation ... any alleged FLSA violation by CSB was not willful." Defendants' Objections, page 4. When coupled together, the defendants' first and second objection form what is, essentially, a statute of limitations argument. Stated succinctly, the defendants seek dismissal of Smith's individual and collective capacity claims on the ground that they are barred by the statute of limitations because he failed to file his opt-in consent form either at the time the suit was filed or within the applicable limitations period.

It is undisputed that plaintiff Smith did not file a consent to join the collective action until May 14, 2002, which was beyond two years but less than three years from the date his cause of action accrued. Additionally, it is undisputed that the limitations period under the FLSA is two years, unless there are genuine issues of material fact concerning willfulness on the part of the defendants, which could extend the limitations period to three years. 29 U.S.C. § 255(a). What is disputed, however, is whether CSB violated the FLSA and, if it did, whether such violation was willful. The Magistrate Judge recommended that the court answer in the affirmative to both of the preceding two contested issues. It is to this latter recommendation that the defendants object.

■ The crux of the defendants' objection is that, as a matter of law, any alleged FLSA violation by CSB was not willful. As noted earlier, Congress has provided two separate limitations periods for non-willful and willful violations of the FLSA,

two years and three years respectively. 29 U.S.C. § 255(a). As the defendants correctly state, "[t]o benefit from the three year limitations period under § 255, Smith must demonstrate that CSB's alleged FLSA violation was willful." Defendants' Objections, page 16. A violation is willful if an employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

In support of their contention that there has been no willful violation of the FLSA, the defendants argue that the Magistrate Judge

mistakenly shifts the burden of proof to CSB to establish that any alleged violation [of the FLSA] was not willful. Relevant jurisprudence requires that Smith bear the burden to prove that any alleged violation was willful in order to invoke the three year limitations period for such violations. Smith has offered no competent evidence to dispute CSB's evidence of non-willfulness as is his burden.

Defendants' Objections, page 4.

■ Plaintiff Smith concedes that both he and "Magistrate Judge Crigler relied on Central Security Bureau's own evidence, submitted in support of its motion for summary judgment, in concluding that a factual issue with respect to willfulness precludes summary judgment." Plaintiff's Response to Defendants' Objections, page 6. Despite the defendants' contention to the contrary, however, the mere fact that the plaintiff did not present his own evidence to establish willfulness does not mandate an entry of summary judgment in favor of the defendants. Instead, "summary judgment ... is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. Pepsi-Co, Inc.,* 203 F.3d 274, 279 (4th Cir.2000)

(quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). If the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, then there are genuine issues of material fact. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

There is evidence in this case, albeit evidence produced by the defendants, that there are genuine issues of material fact pertaining to willfulness. Specifically, when construed in a light most favorable to the non-moving plaintiff, the evidence reasonably shows that CSB knew or disregarded knowledge of the fact that partial-day deductions were not permissible for salaried employees. As the Magistrate Judge explains, because "there is evidence that Defendants deducted time allotted to partial-day absences pay from the pay of so called 'salaried' employees, their action reasonably could be construed as willful." Report and Recommendation, page 21. Moreover, "there is evidence that Defendants further declined to pay proper overtime to employees they classified as exempt but whom they knowingly treated as hourly." *Id.*

The defendants contend that by recommending a denial of their motion for summary judgment, the Magistrate Judge is requiring "CSB to prove non-willfulness, when *McLaughlin* and its progeny reiterate that the plaintiff bears the ultimate burden of proof on the issue." Defendants' Objections, page 20. The defendants mistakenly interpret the Magistrate's recommendation for a denial of summary judgment as a shift in which party bears the ultimate burden in this controversy. Nothing in the Magistrate's Report and Recommendation, or in this court's opinion, is inconsistent with *McLaughlin* and its successor cases. The plaintiff still bears the ultimate burden in this civil action. Put differently, plaintiff Smith cannot prevail on his claim at trial without proving each and every element by a preponderance of the evidence. Denying the defendants' motion for summary judgment does nothing to alter this ultimate burden.

After reviewing the record, and for the reasons stated herein and in the Magistrate Judge's Report and Recommendation, the court shall find that there are genuine issues of material fact concerning willfulness on the part of the defendants, which could extend the limitations period to three years. The defendants' second objection to the Magistrate Judge's Report and Recommendation, therefore, shall be OVERRULED.

### C. Objection 3—*Whether CSB Paid Field Supervisors on a Salaried Basis:*

 The willfulness issue notwithstanding, the defendants' final objection is that, contrary to the Magistrate's Report and Recommendation, and "as a matter of law, CSB properly paid field supervisors on a salaried basis." Defendants' Objections, page 4. In *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court articulated a two-part test to aid lower courts in determining whether an employer properly has established salary-based employment. Specifically, courts are to inquire into whether (1) there is evidence of actual impermissible deductions or (2) the employment policy of the defendant creates "a significant likelihood of impermissible deduction."

As evidence of actual impermissible deductions, plaintiff Smith points to two separate incidents in which he received less than his normal working salary.[4] These

---

**4.** Additionally, before he withdrew from this civil action by court order dated September 5,

2002, opt-in plaintiff Robert Ennis also presented evidence of two instances where his

deductions were in the pay periods June 25, 1999 through July 8, 1999 and January 7, 2000 through January 20, 2000. The defendants argue that these two pay periods represent the first and the last weeks in which Smith was employed as a field supervisor. CSB then notes that under the relevant statute and regulations, "failure to pay full salary in the initial or terminal week of employment is not considered inconsistent with salary basis of employment." 29 C.F.R. § 541.118(c).

While it is undisputed that Smith's terminal week of employment was encompassed in the January 7 through January 20 pay period, the parties disagree as to whether the June 25 through July 8 period was the plaintiff's first pay period in his new position. If it was, as the defendants contend, then the deductions taken during the pay periods at issue would be permissible and, as a matter of law, would not affect Smith's status as a salaried employee. If, however, the June 25 through July 8 pay period was not the plaintiff's first pay period in his new position, as Smith argues, then the deduction taken by CSB would be inconsistent with salary basis of employment.

There is evidence in the record supporting both theories. Plaintiff Smith argues that he was promoted on June 17 and, therefore, the June 25 through July 8 pay period would not have been the first in his new position. The defendants, conversely, point to a declaration by Beverly Rowe in which she states that Smith accepted the promotion on June 17, but that the promotion did not become effective until the June 25 pay period. In support of his contention that the aforementioned pay period was not his first in his new position, however, Smith cites CSB's earlier answers to interrogatories in which June 17 was portrayed as the effective date of Smith's promotion. Despite CSB's contention to the contrary, then, there is at very least a factual dispute as to whether actual impermissible deductions were made from Michael Smith's salary.

■ The defendants contend, however, that any impermissible deductions on their part are subject to cure under the "window of corrections" defense. As set out in the federal regulations, the window of correction defense provides that

where a deduction not permitted [by the FLSA] is inadvertent, or is made for reasons other than the lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). This defense, in effect, saves employers from forfeiting their salary basis exemption because of inadvertent or non-work related deductions that later are reimbursed to employees. *Auer*, 519 U.S. at 463, 117 S.Ct. 905. The *Auer* Court explained, however, that the window of correction defense is available only if the deduction was inadvertent or made for some reason other than lack of work. *Id.* (citing 29 C.F.R. § 541.118(a)(6)). Since *Auer*, the circuit courts considering the window of correction defense have held that the defense is only available to an employer who is found to have objectively intended to pay its employees on a salary basis in the first place. *See, e.g., Takacs v. Hahn Automo-*

---

pay was deducted for working less than forty hours in a given week. During the pay periods of April 16, 1999 through April 29, 1999, former opt-in plaintiff Ennis worked a total of seventy-nine hours instead of eighty hours and, as a result, was paid $553.00, instead of his "salary" of $560. Similarly, for the pay period of May 28, 1999 through June 10, 1999, Ennis was docked for working seventy-eight and one half hours and paid only $549.50.

*tive Corp.*, 246 F.3d 776 (6th Cir.2001); *Whetsel v. Network Property Services*, 246 F.3d 897 (7th Cir.2001).

As the plaintiff points out, in *Takacs v. Hahn Automotive Corp.*, 246 F.3d 776 (6th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 202, 151 L.Ed.2d 143 (2001), the Sixth Circuit considered an issue left open by the *Auer* Court, and of utmost importance to this matter. Specifically, the Sixth Circuit addressed the question of whether an employer may utilize the window of correction defense if it had an actual practice of making more than a single impermissible deduction or had a policy that, as here, created a significant likelihood of impermissible pay deductions for salaried employees.

After relying on the Secretary of Labor's interpretation of the window of correction defense, the Sixth Circuit held that the defense was unavailable to an employer that had a policy that created a significant likelihood of impermissible deductions and a practice of making such deductions. *Id.* at 783. The court explained that "[i]n essence, we believe that if employers could simply 'use window of correction to comply retroactively with the salaried-basis requirement,' the 'salary basis' test would be rendered 'essentially meaningless.'" *Id.* (quoting *Klem v. County of Santa Clara*, 208 F.3d 1085, 1092 (9th Cir.2000)) (citing *Yourman v. Giuliani*, 229 F.3d 124, 128 (2d Cir.2000), *cert. denied*, 532 U.S. 923, 121 S.Ct. 1362, 149 L.Ed.2d 291 (2001)).

As set forth below, CSB has not and cannot establish an objective intention to pay Smith and the other Field Supervisors on a "salary basis" because its own employment policy effectively communicates that deductions will be made in specified circumstances, thereby violating *Auer* and its progeny. CSB, therefore, cannot avail itself of the window of corrections defense. The defendants are left, then, with their argument that there was no actual practice of making impermissible deductions.

Even assuming, *arguendo*, that the defendants are correct and that there was no actual practice of making impermissible deductions, the inquiry is not over. There is still a question as to whether CSB's employment policy satisfies the second prong of the salary-basis test. That policy states, in pertinent part, that "[s]alaried employees are expected to work forty (40) hours each week. If you do not, you will only receive compensation for the hours you work. The state labor law says 'NO WORK; NO PAY.'" Pl.'s Mot. for Part. Summ. J. Ex. 5 (emphasis in original).

■ Under the salary-basis test, in the absence of actual deductions, the employer still fails the test if its employment policy creates a "significant likelihood" of deductions. *Auer*, 519 U.S. at 461, 117 S.Ct. 905. Specifically, a "clear and particularized" policy, "which 'effectively communicates' that deductions will be made in specified circumstances" would not meet the standard. *Id.* In order to be sufficiently "particularized," the policy must apply only to salaried employees, not both to salaried and hourly employees.

■ Defendants' counsel conceded during argument at the summary judgment hearing that the relevant portions of the policy apply only to "salaried" employees. The dispositive issue, then, is whether the policy creates a "significant likelihood" of deductions. The mere possibility of an employee deduction in pay does not defeat an employee's salary status. *Karson v. American College of Cardiology*, 1999 WL 87547 at *3 (4th Cir.1999) (unpublished) (citing *Auer*, 519 U.S. at 460, 117 S.Ct. 905). When the policy effectively communicates that deductions will be made in specified circumstances, however, the employer violates the FLSA. Such is the case here.

Notwithstanding CSB's contention to the contrary, their employment policy is not "at best vague . . . ambiguous . . . and broadly-worded." Defendants' Objections, pages 30–31. As the Magistrate Judge notes, the "policy essentially shouts in capital letters", "NO WORK; NO PAY." Report and Recommendation, page 26 (emphasis added). The defendants next argue that the words "no work; no pay" are qualified by the preceding phrase, which states that the policy refers only to Virginia law. According to the defendants, "[t]he policy may effectively communicate Virginia law, but not federal law under the FLSA" because "the policy does not 'effectively communicate' that field supervisors will suffer deductions which the FLSA does not allow." Defendants' Objections, page 31. CSB's contention is unavailing.

Considered in its entirety, CSB's employment policy unambiguously makes clear the likelihood that impermissible deductions will be made. Prior to the policy's referral to the "state labor laws," the policy provides that "[i]f you do not [work forty hours per week], you will only receive compensation for the hours you work." The policy clearly and unambiguously provides that salaried employees will not be paid for forty hours unless they work forty hours. Like the Magistrate Judge, the court fails to see how the policy can be interpreted in any way other than "salaried" employees will be paid only for the hours worked. In short, the policy effectively communicates that deductions will be made in specified circumstances and, therefore, fails to meet the standard articulated in *Auer*.

As a matter of law, therefore, the defendants' third objection shall be OVERRULED and their motion for summary judgment shall be DENIED. The plaintiffs, conversely, are entitled to summary judgment on the issue of liability, namely, whether the position of Field Supervisor is exempt from the requirements of the FLSA as a salaried basis position. For the reasons set out herein, the court holds that it is not exempt as a matter of law.

## IV.

Because neither the plaintiff nor the defendants filed timely objections to the Magistrate Judge's recommended disposition as to the defendants' Motion for Default Judgment, there is no reason for the court to address the issue. In the interest of completeness, however, the court notes that having thoroughly reviewed the entire case and all relevant law, the court is in complete agreement with the Magistrate Judge's analysis. For the reasons articulated in the Magistrate's Report and Recommendation, default judgment shall enter only against collective opt-in plaintiffs James McCormick, Michael Brandon, Joe Domagala, Marvin Lawrence, and Printise Hinton, who should be dismissed for failure to prosecute their claims in the collective action.

## V.

For the reasons articulated herein, the court shall (1) GRANT the Plaintiffs' Motion for Partial Summary Judgment and determine as a matter of law that the position of Field Supervisor was not an exempt salary-based position; (2) DENY the Defendants' Motion for Summary Judgment based on their statute of limitations defense; and (3) GRANT IN PART and DENY IN PART the Defendants' Motion for Default Judgment. Default Judgment shall enter only against collective opt-in plaintiffs James McCormick, Michael Brandon, Joe Domagala, Marvin Lawrence, and Printise Hinton, who should be dismissed for failure to prosecute their claims in the collective action.

Additionally, the court shall OVERRULE the defendants' objections to

the Magistrate Judge's Report and Recommendation. The court shall ADOPT the Magistrate Judge's Report and Recommendation in its entirety. The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid in the decisional process.[5] An appropriate Order shall this day enter.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Magistrate Judge Crigler and to all counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

#### ADJUDGED, ORDERED, AND DECREED

as follows:

(1) The defendants' "Objections to Report and Recommendation," filed September 5, 2002, shall be, and they hereby are, OVERRULED;

(2) The Magistrate Judge's Report and Recommendation, filed August 21, 2002, shall be, and it hereby is, ACCEPTED and ADOPTED in its entirety;

(3) The plaintiff's "Motion for Partial Summary Judgment," filed May 1, 2002, shall be, and it hereby is, GRANTED (on issues of liability). As a matter of law, the position of Field Supervisor was not an exempt salary-based position;

(4) The defendants' "Motion for Summary Judgment," filed May 1, 2002, shall be, and it hereby is, DENIED; and

(5) The defendants' "Motion for Default Judgment With Respect to Opt–In Plaintiffs," filed July 15, 2002, shall be, and it hereby is, GRANTED IN PART and DENIED IN PART. Default Judgment shall enter only against collective opt-in plaintiffs James McCormick, Michael Brandon, Joe Domagala, Marvin Lawrence, and Printise Hinton, who should be dismissed for failure to prosecute their claims in the collective action.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to Magistrate Judge Crigler and to all counsel of record.

### REPORT AND RECOMMENDATION

CRIGLER, United States Magistrate Judge.

This action alleging Defendants' failure to pay overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, is before the undersigned under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth findings, conclusions, and recommendations for the disposition of the parties' May 1, 2002, cross motions for summary judgment and Defendants' July 15, 2002, Motion for Default Judgment With Respect to Opt-in Plaintiffs. The parties appeared before the undersigned and presented oral argument on July 23, 2002. For the reasons that follow, the undersigned will recommend that the presiding District Judge GRANT Plaintiff's Motion for Partial Summary Judgment (on issues of liability); DENY Defendants'

---

**5.** Pursuant to *U.S. v. Raddatz*, 447 U.S. 667, 674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the district court is not required to rehear testimony on which the magistrate judge based his findings and recommendations in order to make an independent evaluation of credibility. Specifically, the Supreme Court found that "[w]e find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the [arguments] in order to carry out the statutory command to make the required 'determination.' "

Motion for Summary Judgment; GRANT, in part, Defendants' Motion for Default Judgment and DISMISS the claims of opt-in plaintiffs McCormick, Brandon, Domagala, Lawrence, and Hinton, but DENY the Motion for Default Judgment in all other respects.

## BACKGROUND

### I. Procedural Background

Michael Smith filed this action on June 29, 2000, "*individually and on behalf of all current or former employees* of Defendant Central Security Bureau, Inc. who acted as 'Field Supervisors.'" (Compl. at 1) (emphasis added). Neither before nor after this case was certified as a collective action did Smith file a consent form expressing his willingness to join as a party plaintiff in the case. Defendants answered the original complaint on November 8, 2000, contesting whether the case could be brought as a collective action. On April 3, 2001, the undersigned heard argument on Plaintiff's Motion to Compel Production of a Putative Class List, and on April 19, 2001, the undersigned granted the motion and set a discovery and motions deadline for resolution of whether the case could proceed as a collective action. Defendants objected to this order and asked the undersigned to reconsider. On May 31, 2001, the undersigned granted the motion for reconsideration, allowing class-related discovery to move forward, but restricting production of evidence to anonymous salary information regarding "Field Supervisors."

On February 5, 2002, the undersigned conducted a hearing on whether to certify the case as a collective action. On February 19, 2002, the undersigned granted the motion to certify the collective action, relying, in part, on the deposition testimony of CSB's corporate representative. That evidence demonstrated that Michael Smith was "similarly situated" to the other Field Supervisors in both duties and method of compensation. Soon thereafter, thirteen plaintiffs opted into the collective action by filing consents to join the action. Smith filed his consent, or "opt-in" form, on May 14, 2002.

Both sides filed motions for summary judgment on May 1, 2002. After these pleadings were filed, but before responses were due, the undersigned granted Plaintiff's Motion to Reopen Discovery on three discrete issues: (1) information relevant to the "window of correction" defense raised by defendants in their dispositive motion papers; (2) evidence affecting the statute of limitations defense against the opt-in plaintiffs; and (3) damages allegedly suffered by the opt-in plaintiffs.

On July 15, 2002, the parties each filed their responses to the May 1, 2002, motions for summary judgment. Also on July 15, Defendants filed a motion seeking entry of default and for default judgment against all thirteen opt-in plaintiffs for their alleged failures to cooperate in discovery after opting into the collective action. The undersigned heard argument on these motions on July 23, 2002, from which this Report ensues.

### II. Factual Background

On June 17, 1999, Michael Smith accepted a promotion to the position of "Field Supervisor" with defendant Central Security Bureau, Inc. ("CSB").[1] At the time Plaintiff accepted the promotion, he signed an employment contract which denominated the position as "salaried" but which fixed the terms of his pay at an hourly rate of $6.50. Also provided at the time the contract was signed was a copy of CSB's employment policy. In pertinent part, this policy provided that, "[s]alaried employees

---

1. Defendant James Rowe is the founder and president of CSB.

are expected to work 40 hours each week. If you do not, you will only receive compensation for the hours you work". "The state labor laws says (sic) 'NO WORK; NO PAY.'" (Pl.'s Mot. for Part. Summ. J. Ex. 5) (emphasis in original).

For the most part, Smith worked well in excess of 40 hours per week, since Field Supervisors were responsible for ensuring that all shifts were covered at the locations where CSB had contracted to provide security. (Field Supervisor Job Description, *Id.* Ex. 6). For example, in the two-week pay period from October 15, 1999, to October 28, 1999, plaintiff worked one hundred eighty-six hours. In the following two-week period he worked two hundred hours. However, on two occasions, Smith worked less than 40 hours in a week: from June 25, 1999, through July 8, 1999, he worked 79 hours; and from January 8, 2000, through January 20, 2000, he worked 39 hours. On both occasions his pay was docked exactly $6.50 for each hour, or the same rate of pay set forth in his employment contract.

The evidence also shows that while the predominance of the other opt-in plaintiffs never work less than 40 hours per week, at least one other opt-in plaintiff experienced similar deductions for what are know in this case as "partial-day absences." Robert Ennis was hired at a weekly "salary", as defendant denominates the compensation, of $560, calculated at the rate of $7 per hour multiplied by 40 hours. For the pay period from April 16, 1999, through April 29, 1999, Ennis worked 79 hours. He was paid $553 instead of his "salary" of $560 which reflected a deduction of $7.00 for the one hour he fell short of 40 hours for that pay period. During the pay period of May 28, 1999, through June 10, 1999, Ennis worked 78.5 hours. He was paid $549.50, again reflecting a deduction of $7.00 for the 1½ hours Ennis fell short of the 40 hour minimum. No evidence has

been produced in this record that would show that any Field Supervisor who experienced "partial-day absences" ever actually received a full salary as if he/she had worked the entire 40-hour week.

**CONTENTIONS OF THE PARTIES**

1. *Defendants' Motions for Summary Judgment and for Default Judgment*

Defendants first contend that there is no dispute that Smith filed his consent opting into the collective action more than two years after his cause of action accrued, and that his claims are barred by the two-year period of limitation under the FLSA. While they also acknowledge that Smith filed his consent opting into the collective action within three years of the date his cause of action accrued, which is within the three-year period of limitations for willful violations under the FLSA, Defendants argue they are entitled to judgment as a matter of law on the question of willfulness, thus depriving Plaintiff of entitlement to relay on the longer period. Should Smith's claims be barred under the applicable statute of limitations, defendants submit that the entire case likewise should be dismissed on the ground that Smith is the only named plaintiff, and that a collective action cannot proceed absent at least one named plaintiff.

Should the court deny their motion on the above grounds, Defendants offer that the discovery evidence shows, as a matter of law, that the compensation paid Smith and all of the collective plaintiffs was a salary. Thus, neither Smith nor any other plaintiff can prevail, and all claims should be dismissed.

At the next alternative tier of arguments in support of summary judgment, defendants focus on Smith's employment, and the fact that there were only two deductions for partial day absences, both of which THEY CLAIM were permissible

under the regulations because they occurred in the first and last weeks of his employment as a Field Supervisor. Defendants acknowledge partial day deductions for Robert Ennis, but they offer that those deductions were inadvertent, and assert the "window of correction" defense under the FLSA.

More generally, Defendants contend that there was no evidence produced in discovery showing any deductions from Field Supervisor pay that would be considered impermissible under the FLSA or its regulations. Interestingly they also assert that the company's employment policy is ambiguous and that, as a matter of law, it cannot be interpreted to create a significant likelihood of impermissible deductions. Therefore, Defendants ask the court to determine, as a matter of law, that Smith and the other collective plaintiffs were paid on a salary basis, and to enter judgment in Defendants' favor on the primary liability claims in this case.

Defendants also seek the entry of default judgment in this case against certain of the collective plaintiffs who filed their consents to opt-in but failed to participate in the discovery process.[2] Defendants acknowledge that the relief sought here should be considered a permissible sanction to impose for failure to engage in the discovery process, even though they have not sought any intermediate sanction provided under Fed.R.Civ.P. 37 before asking the court to dismiss Plaintiff's allegedly offending claims. The undersigned will address this motion before it assesses and offers recommendations on the parties' cross motions for summary judgment.

### 2. *Plaintiff*

In response to Defendants' statute of limitations defense, Smith points out that his complaint clearly sets forth the allegation that he was bringing this action both in his individual capacity *and* on behalf of collective plaintiffs who were similarly situated. Smith does not attempt to avoid the undisputed fact that, while his complaint was filed within the two-year period allowed by the statute, his consent to join the collective action was not filed until after the two-year period had expired. He asserts, however, that there is no dispute over the fact that his consent was filed within three years of the accrual of his cause of action. As a result, Smith offers alternative arguments to support his opposition to Defendants' motion.

First, he contends that even if his consent was separately required under the statute in order for him to proceed as a party to the collective action, his individual action should not be dismissed since he instituted that action well within the two-year period. Second, Smith takes the position that filing a complaint on his clearly articulated individual claim suffices to toll the statute for his participation in the collective action claim, and that such obviates the need for filing a separate consent form. Last, Smith contends that there are genuine issues of material fact concerning whether Defendants' conduct was willful. On this score, Smith simply suggests that the very evidence offered by Defendant in support of summary judgment on the question of willfulness is two-edged. If all the evidence is taken in a light most favorable to him as the non-moving party, a reasonable trier of fact could conclude that Defendants' conduct was willful, as that term is defined and applied under the statute. Therefore, he argues that, should a jury find willfulness, the period of limitations, even for his joining the collective

**2.** The details of defendants' arguments regarding the discovery conduct for each affected collective plaintiff are set forth *infra* in the section discussing the motion for default judgment.

action, would be pushed back from two to three years, and there is no dispute that his consent was filed within the three-year period.

The collective plaintiffs oppose Defendants' motion for default judgment in several particulars, though they offer little-to-no opposition in other particulars. Their principal opposition is to Defendants' effort to obtain default judgment as the result of instructions from plaintiffs' counsel not to answer questions relating to "on-call" time. The collective plaintiffs submit they have made no claim in this case for compensation for "on-call" time as that term is defined by the statute. Plaintiffs further submit that "on-call" issues arise here only as the result of Defendants' record keeping policies that allegedly required the collective plaintiffs to log actual working time as "on-call" time. Plaintiffs' counsel represented that discovery on this matter has never been denied defendants, and, as a result, their motion should be denied.

By the same token, Plaintiffs' counsel acknowledged to the undersigned that five of their number failed to attend properly noticed depositions. No excuse or justification for such failure has been offered. Yet counsel did submit that any failure of Robert Ennis to respond to written discovery was an oversight which had been or was in the process of being corrected. Even then, counsel offered that this discovery does not address any issue of liability that may be before the court on the parties' dispositive motions.[3]

Finally, plaintiffs, themselves, seek partial summary judgment on the question of whether defendants' Field Supervisors were paid on a salary basis. They first offer that the undisputed evidence in this record shows that partial-day deductions in Supervisors' pay actually occurred under circumstances for which there was no statutory or regulatory justification. In addition, Plaintiffs' contend that the written employment policy clearly and unambiguously created the likelihood that impermissible deductions would be made, and that the evidence in the record establishes that such impermissible deductions actually were made based upon that employment policy. Accordingly, Plaintiffs do not believe there is any defense available to Defendants under the statute or regulations, and that they are entitled to judgment as a matter of law on liability under the FLSA.

## ANALYSIS

### I. Motion for Default Judgment

As indicated above, Defendants' Motion for Default Judgment rests on several alleged or admitted discovery violations by Plaintiff which Defendants believe are sufficiently grievous to support the Court's by-passing intermediate sanctions and the direct entry of default judgment under Fed.R.Civ.P. 37.

These alleged violations are as follows:

(1) five of the opt-in plaintiffs did not appear for depositions;

(2) six of the opt-in plaintiffs did not submit any answers to interrogatories, including all five who did not appear for depositions;

(3) seven of the opt-in plaintiffs did not file answers to interrogatories until July 11, which was six days after the extended discovery deadline of July 5;

---

**3.** There seems to be no dispute that Ennis submitted himself for deposition where defense counsel both had an opportunity to and did ask questions of him relevant to the issues before the court. He failed to respond, however, in a timely fashion to the written discovery. Counsel for Defendants could not represent that the answers to written discovery would provide them with any more information than Ennis's deposition already has disclosed.

(4) of the seven who submitted responses to interrogatories, those responses were not signed by the plaintiffs under oath;

(5) those who did sign under oath, with one exception (Stacey St. James), did not answer interrogatories pertaining to the "on call" system of defendant CSB and compensation under that system, which Defendants argue is relevant to questions of damages;

(6) those who did attend depositions did not answer questions regarding the "on call" system.

This motion, of course, has both dispositive and non-dispositive components to it. In one sense, discovery sanctions ordinarily are non-dispositive, and, under authority of 28 U.S.C. § 636(b)(1)(A), the undersigned initially may decide them subject to an appeal under Fed.R.Civ.P. 72 to the presiding District Judge. However, the undersigned does not perceive that a magistrate judge has authority to enter a default judgment as a sanction under Rule 37 absent the consent of the parties. Instead, this Court must make a recommendation relating to such a sanction to the presiding Court.

■ That having been observed, the undersigned finds that five of the collective plaintiffs who opted into this case both failed to attend their depositions and failed to submit responses to interrogatories. These parties were identified as James McCormick, Michael Brandon, Joe Domagala, Marvin Lawrence, and Printise Hinton. No excuse has been offered for such failure, despite advance admonition by the undersigned when the collective action was certified that the consenting plaintiffs were to submit to post-consent discovery. Accordingly, the undersigned will recommend that the presiding judge grant Defendants' Motion for Default Judgment against plaintiffs McCormick, Brandon, Domagala, Lawrence, and Hinton and dismiss them as collective plaintiffs in this case.

■ On the other hand, the undersigned does not find that Defendants have presented sufficient circumstances to recommend entry of default against any other collective plaintiff. First, the undersigned observes that Defendants have not been hampered from gathering the same kind of information in the depositions that were taken of these plaintiffs that was sought from them by the written discovery. Furthermore, there has been or will be supplementation of this discovery as directed by the undersigned on the date of the hearing, and Defendants have not been and will not be prejudiced by Plaintiffs' technical failures.

Finally, the undersigned finds that Plaintiffs never have intended to proceed, nor are they currently proceeding, on any claim for compensation for "on-call" time. Thus, evidence relating to the basis for any "on-call" compensation is not relevant to the case, and Plaintiffs need not respond to written discovery seeking such information. The undersigned is of the view that Defendants either are or were aware already of the company's own timekeeping policy related to the recording of actual work time as "on-call" time, as well as the forms used to record such. Moreover, counsel for Defendants did not suggest during the hearing that any plaintiff who had responded to discovery had been deficient in this respect. Therefore, no sanctions, apart from the undersigned's recommendation to dismiss the claims of those collective plaintiffs who completely failed to participate in the post-certification discovery process, should be imposed, and to that extent the motion for default should be denied.

In summary, the undersigned RECOMMENDS that Defendants' Motion for Default Judgment be GRANTED to the

extent that the claims of plaintiffs McCormick, Brandon, Domagala, Lawrence, and Hinton should be DISMISSED for their failure to participate in discovery, but that the motion, in all other respects, should be DENIED.

## II. Motions for Summary Judgment

### 1. *Summary Judgment Standard*

A party is entitled to summary judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to avoid summary judgment, the non-moving party must present sufficient evidence to support each element of that party's claim or defense. *See id.* When ruling on a motion for summary judgment, the court must assess the evidence in a light most favorable to the non-moving parties. *See Myers v. Finkle*, 950 F.2d 165 (4th Cir.1991).

### 2. *Statute of Limitations*

Defendants seek dismissal of Smith's individual and collective capacities claims on the ground that they are barred by the statute of limitations because he failed to file his opt-in consent form either at the time the suit was filed or within the limitations period. As indicated, there is no dispute that Smith did not file a consent to join the collective action until May 14, 2002, and that this was beyond two years but less than three years from the date his cause of action accrued. Moreover, there is no dispute that the limitations period under the FLSA is two years, unless there are genuine issues of material fact concerning willfulness on the part of Defendants, which could extend the limitation period to three years. 29 U.S.C. 255(a).

The undersigned will address more fully below Defendants' contention that they should be granted summary judgment on

Plaintiffs' willful conduct claim. Nevertheless, a resolution of this is pertinent to the Court's evaluation of the statute of limitations defense simply because it bears on whether the period of limitations is three rather than two years from the date Smith's cause of action accrued. In the end, the undersigned believes there are genuine issues of material fact concerning whether there were willful violations of the FLSA, which must await resolution at trial.

Willfulness, however, is only the tip of the proverbial statute of limitations iceberg. The body of this iceberg lies beneath the surface of what the parties presented to the court in their respective memoranda. It goes deeper, to the form Smith pleaded, the capacity in which he brought this case, and the substantive effects that form has on whether Smith's claims were brought in a timely fashion even under the two-year limitations period. In other words, the form by which Smith instituted this action, i.e. his allegations setting forth the capacities in which he brought this case, will be seen to impact the substantive issue of whether his claims are barred even by the shorter two-year statute of limitations.

In what is anything but a model of drafting clarity, the FLSA essentially allows employees to institute actions in courts of competent jurisdiction for themselves and on behalf of others. 29 U.S.C. § 216(b) In an apparent effort to sanction both individual and collective actions, the statute specifically provides a right to "one or more employees" to institute suit *"for and in behalf of himself or themselves and other employees* similarly situated." *Id.* (emphasis added). The undersigned uses the term "apparent" because, according to the decisional authorities, one pleading an FLSA claim may achieve something less than expected if suit is instituted simply

utilizing the statutory language to plead the capacity by which the plaintiff institutes the case.

Here, Smith alleges the following in his complaint:

> "Plaintiff Michael Smith ... herein proceeds individually *and* on behalf of all current or former employees of [defendant] who acted as 'Field Supervisors.' Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), he is initiating this action as a class of former and current 'Field Supervisors' ...."

(Compl. at ¶ 1) (emphasis added).

Moreover, in his March 15, 2001, Motion to Compel Production of Putative Class List, Plaintiff reiterated that he was bringing the case "individually and is seeking to proceed as a representative [of the class]." Though the case proceeded for some time as an individual action brought by Smith, and would have continued as such had evidence not been developed to show there were other Field Supervisors who were situated similarly to Plaintiff, the Court certified a collective action, which, under the FLSA, involves an "opt-in" process under the statute. No one disputes here that whether any opt-in plaintiff timely joins the collective action is controlled by the date a consent is filed to join the collective action. 29 U.S.C. § 256.[4] Because Smith did not file his consent to join the collective action until after the two-year period expired, an issue has been raised as to whether he may now proceed either as an individual or as part of the collective action or both, apart from any consideration of whether there was willful conduct.

Defendants' position, at least their position as refined at oral argument, simply is that when Smith's motion to certify the case as a collective action was granted, his individual claim was supplanted by the collective action. As a result, the requirements of 29 U.S.C. § 256, which fix the date consents to join the collective action are filed as the tolling event, controls, and because Smith did not file his consent within the two-year period, Defendants offer that all his claims should be dismissed as barred by the statute of limitations.

Smith, on the other hand, takes the position that: 1) his complaint clearly and unambiguously apprizes the reader that he is proceeding both individually and on behalf of others; and 2) the order certifying the case as a collective action did nothing to vitiate the fact that he tolled any limitation period by filing in his individual capacity. Alternatively, Smith has offered that, if he is barred from proceeding as a part of the collective action and, by that, disallowed any benefit of the evidence applicable only to the collective action, his individual claim should be allowed to proceed in any event because the statute of limitations was tolled when he filed the individual action in the first instance.

The issues before this court are whether a named plaintiff can institute and proceed simultaneously in individual and collective capacities, and whether the tolling effects of filing the individual action continue for a plaintiff who initiated suit in his individual and collective capacity, notwithstanding his failure to file a consent to join the collective action until after the two-year limitations period had lapsed. It is unfortunate

---

**4.** The truth of the matter is there was a delay of more than several months between the time plaintiff sought collective certification and the time the Court ordered it, during which the undersigned wrestled with the appropriate process to follow in certifying an FLSA collective action. In hindsight, the Court is somewhat grieved by the fact that some potential plaintiffs are likely to have been deprived of an opportunity to join the case because, by the time collective action certification issued, the statute of limitations had run as to them.

that most of the guiding decisional authority in other circuits, and all the decisional authority in the Fourth Circuit, rests in unpublished decisions. Even then, none speaks directly to the circumstances before the Court in this case.

The only published decisions in this area that have come to the Court's attention are *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984) and *Perella v. Colonial Transit, Inc.*, 148 F.R.D. 147 (W.D.Pa.), *aff'd* 977 F.2d 569 (3rd Cir.1992). In *Allen*, a case cited by Smith as supporting his contentions, there were multiple plaintiffs who filed individual claims that later were joined under Fed.R.Civ.P. 20(a). In other words, that case was not initiated as a collective action, or anything purporting to seek collective certification. The Court held that the time of filing controlled whether any of the plaintiffs had tolled the statute of limitations.

*Perella*, on the other hand, appears to have been brought as a collective action. When it was shown, however, that the named plaintiff had failed to file a timely consent, and no other plaintiff had filed consents in order to opt in, the court permitted the named plaintiff to proceed on his individual claim. Essentially the court treated plaintiff's case as an individual claim and then held that the statute of limitations was tolled when the case was filed, notwithstanding the absence of any consent being filed by the named plaintiff.

Although the Fourth Circuit has not been entirely silent on related subjects, it has elected not to publish any of its decisions. Thus, neither the undersigned nor the presiding judge has any authoritative circuit guidance.[5] For want of any better source to determine the state of the applicable law in this circuit, however, the undersigned believes it important to refer to these cases in this Report, if for no other

reason than to be informed, and to inform the presiding court, of the circuit's thinking in cases having some similar components.

The undersigned first turns to *Lee v. Vance Executive Protection, Inc.*, 7 Fed. Appx. 160, 2001 WL 108760 (4th Cir. 2001)(UP). There, a panel of the Fourth Circuit Court of Appeals held, under 29 U.S.C § 216, that when multiple plaintiffs attempt to set forth the capacity in which the suit is brought by using the precise terms of the statute in a complaint, i.e. that they are instituting an "action on behalf of themselves and all other employees similarly situated," as a matter of law, the complaint is to be construed as one pleading a collective action and not separate individual actions brought by multiple plaintiffs under the FLSA. In so holding, the court essentially dismissed the plaintiffs' proffer that they had intended to file multiple individual actions. The panel then determined that additional plaintiffs could be added only by the collective action opt-in process and not by amending the complaint.

Clearly the *Lee* panel recognized that the issue of capacity arose late in the progress of the case, and they reflected a reticence to allow the plaintiff to "change the nature of the action in the middle of judicial proceedings without proper notice to the court and employer." 2001 WL 108760 at *6. The court did not foreclose, however, the amendment process under the Rules of Court so as to allow some of the employees to bring multiple individual claims as "justice required." *See* Fed. R.Civ.P. 15(a). However, the court did not find that the circumstances of that case demonstrated such cause. Accordingly, putative plaintiffs who had not timely filed consents were not permitted to avoid the bar of the statute of limitations by an

---

**5.** *See* CTA4 Rule 36(c).

amendment to the pleading which related back to the date of filing, and the court affirmed the district court's denial of their motion to so amend.

Smith, the named plaintiff here, did not employ merely the statutory language interpreted in *Lee* to plead the capacities in which he was instituting the case. Instead, Smith, in what the undersigned finds to be clear and unambiguous terms, stated that he was instituting the case "individually **and** on behalf of [others] . . . ." The undersigned cannot imagine how Smith could have made more clear the dual capacities in which he was bringing the case. Moreover, he did not wait until midstream or even late in the progress of the case to make his intentions obvious, and, time and again, he reconfirmed the dual capacities in which he was proceeding in the various motions and papers filed with the Court during the discovery and collective action certification processes. Therefore, even if *Lee* were controlling published circuit authority, its results should not obtain here. If anything, *Lee* could be viewed as a template for pleading dual capacity actions and providing notice of such in a clear and timely fashion. That certainly is the case here.

Some three years before *Lee,* another panel of the circuit decided *In re Food Lion Inc.,* 151 F.3d 1029, 1998 WL 322682 (4th Cir.1998)(UP). This case is instructive for several reasons. First, the Hon. James H. Michael, Jr. was a member of that panel, and he also is the presiding District Judge in this case. Second, the court addressed the distinctions between individual and collective actions for statute of limitations purposes, clearly embracing the foundational rule that the statute is not tolled as to any collective plaintiff until and unless a consent is filed. 29 U.S.C. §§ 216(b) and 256(a); *see also Songu–Mbriwa v. Davis Memorial Goodwill Indus.,* 144 F.R.D. 1 (D.D.C.1992); *Kuhn v.*

*Philadelphia Elec. Co.,* 745 F.2d 47 (3rd Cir.1984).

The *Food Lion* panel certainly predicted, in large measure, the holding in *Lee* that the mere recitation of the statutory language in the complaint to establish the capacity of any named plaintiff, without more, will be construed to plead only a collective action. It also was prescient in forecasting the principle later exposited in *Lee* that where an action is brought as an "individual case with several plaintiffs, there would have been no need for any consents to have been filed." 1998 WL 322682 *12; *see also Allen, supra.*

It is interesting that both the *Food Lion* and *Lee* courts made an effort to discern from the pleadings whether the plaintiffs had brought individual cases, and both determined that an individual case had not been pleaded on the record before them. Neither court, however, foreclosed the prospect that a named plaintiff simultaneously could advance an individual and a collective action, instead holding only that allegations merely reciting the statutory language were insufficient to support dual capacity claims. The point to be made here is that if the Fourth Circuit has had an opportunity but has elected not to expressly foreclose a plaintiff or a group of plaintiffs from bringing an action in such dual individual and collective capacities, so long as the allegations set forth in the complaint put the employer and the court on notice of such, far be it for the undersigned to take the view that dual capacity actions are foreclosed, as the Defendants argue in this case.

Furthermore, if dual capacity suits are allowed when properly pleaded, then the law appears well settled, even in this circuit, that the statute of limitations for the individual action is tolled upon filing the complaint. There also is nothing to suggest in the history of the Fourth Circuit's

involvement with this statute, much less in the history of any other court's involvement with this portion of the statute, that certifying a collective action when the case has been brought by a named plaintiff in dual capacities, *ipso facto* transforms the entire lawsuit to a collective action, thus completely vitiating any tolling in the named plaintiff's individual case. The authorities from other circuits that already have been cited, scarce though they may be, actually indicate to the contrary.

What is the practical result of this principle in the case at bar? Must a plaintiff who clearly has articulated his filing in a dual capacity take action to twice toll the statute of limitations? To the undersigned, it would appear a bit strange, unfair, and incongruous to say that the plaintiff who files an individual action and then asks for certification of a collective action must run the statute of limitations gauntlet twice, at least to preserve his individual claim. Even in Mediaeval times, the hand of the maiden awaited the end of the first run.

The undersigned also has difficulty grasping the notion that while the Plaintiff came under the statutory wire when he filed the case, and would have remained protected by that tolling had certification of the collective action been denied, suddenly the limitations period becomes "untolled" because the Plaintiff failed to file a written consent within two years after his cause of action accrued. From a conceptual point of view, the undersigned does not understand how one unrings a bell that already has tolled. But congressional dictates sometimes are counter intuitive, and there seems to be little question among the decisional authorities that opt-in consents are necessary to preserve a plaintiff's right of action in the collective case. Therefore, but for the presence here of questions of fact related to willfulness,

Plaintiff's claim in his collective capacity would be barred.

The undersigned nevertheless believes that Plaintiff's individual claim should continue. *In re Food Lion* seems to suggest that, where the record reveals an intent to file an individual claim, and the individual claim is timely filed, it should be allowed to continue, notwithstanding the individual plaintiff's failure to timely file a consent to join the collective action. As set forth above, Smith's dual capacity was set forth in the pleadings from the outset. Defendants' Motion for Summary Judgment seeking dismissal of all Smith's individual claims should be denied.

In summary, and for the reasons that follow concerning the issue of willfulness, Defendants' motion for summary judgment based upon the statute of limitations should be DENIED without prejudice to renew concerning Smith's capacity as a named plaintiff in the collective action once findings are rendered on the claim alleging willful violations of the FLSA.

### 3. *Willfulness*

As stated above, Congress has provided two separate limitations periods for non-willful and willful violations of the FLSA, two years and three years, respectively. 29 U.S.C. § 255(a). A violation is willful where the employer knew or recklessly disregarded that its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

Applying *Richland Shoe*, the Fourth Circuit affirmed a district court's finding of willfulness where, *inter alia*, the record included evidence that the defendant had destroyed some documents and withheld others to impede the Department of Labor's investigation. *Martin v. Deiriggi*, 985 F.2d 129, 135–36 (4th Cir.1992). The court found that the trial court's "factual

determination that 'defendants knew that their employment practices were in clear violation' of the FLSA," was not clearly erroneous. *Id.* at 136.[6]

In *Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir.1995), the Second Circuit applied *Richland Shoe* and reversed a district court who did not find willfulness, finding as a matter of law that it was willful conduct for an employer to continue to treat "exempt" employees as hourly wage-earners by requiring them to punch a time clock and computing their pay off of the recorded time. *Id.* at 40. The court noted that, "the law was clear at all relevant times that employees compensated on an hourly basis are subject to the FLSA," and, thus, determined defendants to be in reckless disregard of the statute's mandates. *Id.* at 40–41.

When defendant, CSB, was formed in 1972, James Rowe spoke with an official at the Department of Labor concerning whether he could pay supervisors on a salary basis. (Beverly Rowe Dep. at 13–16). In the early 1990's, Rowe spoke with Edwin Williams at the Virginia Department of Labor and Industry, who informed him that he should contact Ms. Nancy Chase at the federal Wage & Hour Division field office for specific information on the application of the FLSA to his company's employees. (Williams Decl. at ¶ 4). Document discovery revealed that defendants also maintained copies of Department of Labor regulations in their files. (Defs.' Mot. for Summ. J. Ex. I).

Defendants offer this evidence to show the exercise of diligence or good faith on their part, and they ask the Court to hold that such diligence, as a matter of law, was sufficient to overcome a claim of willfulness or deliberate indifference under the FLSA. However, that conclusion can be reached under only two conditions, namely: 1) if the court were required to construe this evidence only in a light most favorable to the defendants and, even then, divorced from all the other attendant circumstances of this case; or 2) if the law required a finding of no willfulness upon any showing of diligence. Neither condition applies.

When construed in a light most favorable to the plaintiff, as the law requires, the evidence reasonably shows that Defendants knew or disregarded knowledge of the fact that partial-day deductions were not permissible for salaried employees. For example, there is evidence that Defendants deducted time allotted to partial-day absences pay from the pay of so called "salaried" employees, their action reasonable could be construed as willful. In addition there is evidence that Defendants further declined to pay proper overtime to employees they classified as exempt but whom they knowingly treated as hourly. In addition, Defendants cannot escape the negative inferences raised by an ordinary interpretation of the company's own employment policy which will be discussed more fully below in the section entitled *"Salary Basis"*. In the end, the undersigned declines to narrow the interpretation of all the evidence in the case only to the one that favors Defendants, and then apply that interpretation to recommend granting summary judgment on this issue.

Defendants refer to *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir.1998) for the proposition that the "willfulness bar" is so high that even acting contrary to the advice of a government agency, such as the Wage and Hour Board, would not suffice to scale it. However, *Herman* did not determine whether

---

6. The Fourth Circuit has also held that the question of willfulness is one for the jury to decide, not the judge, assuming of course disputed issues of fact. *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 161–63 (4th Cir.1992).

failing to follow agency advice constituted willful conduct. Instead, the court simply found that the lower court had not properly applied the *Richland Shoe* standard, and it remanded the case with direction to apply the proper standard.[7]

Moreover, there is no evidence in the record before the Court that there was a "legitimate disagreement" between Defendant and the appropriate governmental officials over the Defendants' proposed conduct. Few, if any, pertinent or material facts can be gleaned from the evidence about the incidents except to know that they occurred, and that is insufficient to establish as a matter of law the absence of willfulness. Furthermore, it cannot be disputed that partial day deductions from salaried employees violate the statute. Thus, the relevant question in this case is not whether Defendants had a legitimate, or even any, disagreement with the Department of Labor's interpretation of the statute, but whether Defendants knowingly continued to pay "exempt" employees by the hour or did so recklessly disregarding the applicable law.

To reiterate once more, the undersigned finds there are genuine issues of material fact regarding statutory willfulness and RECOMMENDS that Defendants' motion for summary judgment be denied on this question.

### 3. Salary Basis

The Supreme Court has established a two-part test to aid the Court in determining whether an employer properly has established salary based employment, namely whether: (1) there is evidence of actual impermissible deductions; or (2) the employment policy of the defendant creates "a significant likelihood of impermissible deductions." *Auer v. Robbins*, 519 U.S. 452, 459–60, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).[8] It is further undisputed by either party that pay deductions for partial-day absences are inconsistent with and are impermissible where employment is on a salary basis. 29 C.F.R. § 541.118(a) (2002).

### A. Evidence of Actual Deductions

First, and somewhat counterintuitive, is the fact that whether employees were paid at an hourly rate for hours worked in excess of 40 hours is irrelevant to the exemption analysis. *See Hartman v. Arlington County, aff'd* 903 F.2d 290 (4th Cir.1990) (adopting reasoning of district court); *West v. Anne Arundel County,* 137 F.3d 752 (4th Cir.1998). In other words, unless the evidence shows that an employee was docked for partial day absences, e.g., paid for 38 hours in a 40 hour week, then the employee cannot demonstrate actual deductions sufficient to establish a violation.

### a. Evidence in Named Plaintiff's Case

The named plaintiff here argues that he was docked twice for working less than forty hours: the period of June 25, 1999, through July 8, 1999; and the period of January 7, 2000 through January 20, 2000. Defendant, however, points out that the statute and its regulations allow employers to pay employees only for actual time

---

**7.** The *Herman* court noted that a "legitimate disagreement" between the Board and defendant's counsel may not rise to the level of willfulness, but it declined to decide the case on the merits at the appellate level as a matter of law. Thus, the undersigned cannot read *Herman* to support Defendant's contentions, as it equally can be read to suggest that there were genuine issues of material fact to be resolved by the trial court to which it remanded the case.

**8.** Exemption questions under the FLSA usually involve a second tier of analysis involving the duties of the particular employees in question. Neither side here offers that the Field Supervisors fail to meet exempt status based solely on their duties.

worked in the first and last weeks of employment without jeopardizing the salary-based exemption. 29 C.F.R. § 541.119(c) (2002). Since it is undisputed that the last pay period Smith worked was January 7 through January 20, this then would not be an example of an impermissible deduction. However, Smith accepted a promotion to Field Supervisor on or about June 17, 1999. Therefore, he claims the June 25 through July 8 period would not have been the first pay period in his new position. Defendants have submitted a declaration by Beverly Rowe in which she states that Plaintiff accepted the promotion June 17, but that the promotion did not become effective until the June 25 pay period. This declaration, however, is not consistent with earlier evidence provided by Defendants in answers to interrogatories in which June 17 was portrayed as the effective date of Smith's promotion. Thus, there is at least a disputed question of fact over when Smith actual began as Field Supervisor. Until that fact is resolved, no decision can be made about whether the deduction was permissible.[9]

### b. Evidence in Collective Action

Robert Ennis, an opt-in plaintiff, also presents two instances where his pay was deducted for working less than forty hours. During the two-week period of April 16, 1999, through April 29, 1999, Ennis worked 79 instead of 80 hours. He was paid $553, instead of his "salary" of $560.[10] In other words, Defendants docked him one hour of pay at $7 per hour. Again, for the period of May 28, 1999, through June 10, 1999, Ennis was docked for working 78.5 hours and paid only $549.50.

In addition, Plaintiffs have submitted a portion of the deposition of opt-in plaintiff Lori King in which she states that James Rowe, owner of the company and a co-defendant, instructed her to report on her time sheet that she worked 40 hours, regardless of how many hours she actually may have worked. While the total utility of this evidence is not readily apparent to the Court, it does tend to confirm that defendants likely were wanting the benefits of both worlds under the company's so called "salary" plan by taking hourly-based deductions for partial-day absences on one end of the scale but directing that additional hours not be reported as overtime on the other end. In turn, if Rowe instructed King to write 40 hours to prevent her from keeping track of overtime worked, the salary analysis would not necessarily be impacted. If he instructed her to report 40 hours even if she worked less, it suggests that she would be paid for 40 hours even if she worked less—i.e., she was paid on a salary basis. This instruction could impact damages if liability should be established, since King would not have a record of overtime worked. But, it does not appear to impact the liability analysis.

### B. Employment Policy

The Supreme Court has said that an employment policy creates a "significant likelihood" of deductions and thus fails the salary basis test when the policy is "clear and particularized . . .—one which 'effectively communicates' that deductions will be made in specified circumstances." *Auer*, 519 U.S. at 461, 117 S.Ct. 905. In order to be sufficiently "particularized,"

---

9. The undersigned later will address Defendants' window of correction defense. They offered at oral argument that the deductions were taken here because they were permissible under the regulations. The undersigned ponders whether such intentional and not in-

advertent conduct also can support a window of correction defense.

10. Ennis's two-week salary of $560.00 can be arrived at by multiplying an hourly rate of $7 by forty hours.

the policy must apply only to salaried employees, not both to salaried and hourly employees. *Id.* The policy here simply but boldly provides in capital letters, "No Work, No Pay," and it facially applies only to salaried employees. Moreover, no one has disputed her that a "No Work, No Pay" policy for salary employees violates the FLSA.

Defendants argue that a policy that creates only a "mere possibility of an employee deduction in pay does not defeat an employee's salary status." (Def.'s Mem. in Opp. of 7/15/02 at 7). In support of this contention they cite *Karson v. American College of Cardiology*, 1999 WL 827547 (4th Cir.1999) (unpublished decision). However, the *Karson* court merely found that the policy before it was not "clear and particularized" and that there was insufficient evidence to suggest that it was more than a mere possibility that impermissible deductions would be taken.

Defendants' counsel conceded during argument that the relevant portions of the policy apply only to "salaried" employees. Furthermore, the undersigned finds that the policy reasonably can be construed only to provide that salaried employees will not be paid for forty unless they worked forty hours, and in so finding the undersigned rejects defendants' contention that this portion of the policy is ambiguous. In fact the policy essential shouts in capital letters, "NO WORK; NO PAY." The undersigned questions how it can be interpreted in any way other than that "salaried" employees will be paid only for the hours worked.

Thus, the undersigned finds as a matter of law that the employment policy at issue

is "clear and particularized," and that it creates a substantial likelihood, if not absolute certainty, of impermissible deductions. When this evidence is combined with the evidence of actual deductions, the Defendants' policy fails the salary basis test set forth in *Auer*, as a matter of law. Thus, Defendants' motion for summary judgment should be denied, but Plaintiffs are entitled to summary judgment on this primary question of liability, namely, whether the position of Field Supervisor is exempt from the requirements of the FLSA as a salaried basis position. It is not exempt, and the undersigned RECOMMEND the presiding Judge to so find as a matter of law.

### 4. *Window of Correction Defense*

Defendants, however, contend that any impermissible deductions on their part are subject to cure under the window of correction defense. This defense in effect saves employers from forfeiting their salary basis exemption because of inadvertent or non-work related deductions which later are reimbursed to employees. *See Auer*, 519 U.S. at 463, 117 S.Ct. 905.

The circuit courts considering this defense since *Auer* agree that the window of correction defense is available only to an employer who is found to have objectively intended to pay its employees on a salary basis in the first place. *Takacs v. Hahn Automotive Corp.*, 246 F.3d 776 (6th Cir. 2001); *Whetsel v. Network Property Services*, 246 F.3d 897 (7th Cir.2001).[11] Therefore, having already found, as a matter of law, that neither the employment contract, nor the employment policy, nor the other circumstances in the case are

---

**11.** The Secretary of Labor's insight is crucial because the Supreme Court considered the Secretary of Labor's interpretation by way of an *amicus* brief and indicated that the Secretary's interpretation should be given dispositive weight unless "plainly erroneous or in-

consistent with the regulation." *Auer*, 519 U.S. at 461, 117 S.Ct. 905. The circuits considering the issue since *Auer* also have solicited *amicus* briefs from the Secretary before rendering their respective decisions.

sufficient to support a finding that Field Supervisors were employed on an exempt salary basis, the undersigned concludes that a window of correction defense is not available.

Apart from these circuit authorities, the Supreme Court, itself, noted that the window of correction defense is available only if the deduction was inadvertent or made for some reason *other* than lack of work. *Auer,* 519 U.S. at 463, 117 S.Ct. 905 (citing 29 C.F.R. § 541.118(a)(6)). There are no facts in this record upon which Defendant can establish that Field Supervisors were paid for forty hours notwithstanding having worked less than forty hours.[12] Moreover, the Defendants have offered only a circular argument in support of their claim of inadvertence, and it goes something like this–"We did not intend to pay Field Supervisors by the hour, so any instances where the Field Supervisors were paid by the hour must have been inadvertent." Yet, there is not one iota of evidence in the record showing payment of full salary to any Field Supervisor who worked less than 40 hours. It also stretches the undersigned's credulity to suggest that the company's dispensation of the "No Work; No Pay" policy was inadvertent.

As a matter of law, the undersigned concludes that Defendants have failed to present *prima facie* evidence supporting their window of correction defense. Accordingly, Plaintiffs' Motion for Summary Judgment concluding that Field Supervisors under the circumstances of this case are not exempt salaried employees under the FLSA should be granted, keeping in mind that there remain genuine issues of material fact relating to whether Defendants' conduct was willful. It is so REC-OMMENDED.

## SUMMARY CONCLUSION

For the reasons stated above, the undersigned recommends that the presiding District Judge (1) GRANT Plaintiffs' Motion for Partial Summary Judgment and determine as a matter of law that the position of Field Supervisor was not an exempt salary-based position; (2) DENY Defendants' Motion for Summary Judgment based on their statute of limitations defenses; and (3) GRANT, in part, and DENY, in part Defendants' Motion for Default Judgment. Default judgment should enter only against collective opt-in plaintiffs James McCormick, Michael Brandon, Joe Domagala, Marvin Lawrence, and Printise Hinton, who should be dismissed for failure to prosecute their claims in the collective action.

Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk of the

12. Defendants cite two examples of what they believe are instances where a Field Supervisor was paid full salary for less than 40 hours of work. These examples are Lori King's pay period ending March 2, 2000, and James Sweeney's pay period ending April 29, 1999. However, King's time-sheet for the relevant period shows that she worked a full 80 hours. Sweeney's time-sheet for the period appears to show that he worked 79 hours over the two weeks and was paid $513.50, which is $19.50 less than his bi-weekly salary of $533.00. While there is no explanation in the record for this unusual time-sheet, at the least, Sweeney's records dispel Defendants' argument.

Court hereby is directed to send a certified copy of this Order to all counsel of record.