NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0926n.06

**No. 11-5648**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 21, 2012**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| JAMES ALLEN FRYE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| BAPTIST MEMORIAL HOSPITAL, INC., dba Baptist Memorial Hospital-Memphis, dba Baptist Memorial Hospital-Collierville, dba Baptist Memorial Hospital for Women, | ) ) ) ) ) | |
| Defendant-Appellee. | ) | |

Before:  COOK and STRANCH, Circuit Judges; LAWSON, District Judge[*]

COOK, Circuit Judge.  Plaintiff-Appellant James Allen Frye appeals the district court's orders decertifying his collective action under the Fair Labor Standards Act (FLSA) and granting summary judgment to his former employer due to Frye's failure to file a written consent within the FLSA's statute of limitations.  We affirm.

I.

Frye worked as an ICU Step Down nurse at a hospital run by Baptist Memorial Hospital, Inc. from 2004 until his termination on April 19, 2007.  Baptist Memorial operates three acute-care

---

[*]The Honorable David M. Lawson, District Judge for the U.S. District Court for the Eastern District of Michigan, sitting by designation.

hospitals in Tennessee: BMH-Collierville, BMH-Memphis, and Baptist Memorial Hospital for Women. Although Baptist Memorial has a systemwide HR director, each Baptist Memorial hospital operates independently, with separate administrators and HR functions. Collectively, Baptist Memorial hospitals employ more than 4,000 employees, including 274 supervisors, to staff more than 200 hospital departments. Following his termination, Frye filed a collective action against Baptist Memorial alleging that its policy of automatically deducting pay for employees' lunch breaks (the "automatic-deduction policy") violated the FLSA's requirement that employees be paid for all time worked.

Though the district court initially granted conditional certification, following discovery it decertified the collective action, finding that Frye failed to present substantial evidence that the would-be plaintiffs were similarly situated. *Frye v. Baptist Mem'l Hosp.*, No. 07-2708, 2010 WL 3862591 (W.D. Tenn. Sept. 27, 2010). In doing so, the court considered the factors addressed in *O'Brien v. Ed Donnelly Enterprises, Inc.*, namely: "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." 575 F.3d 567, 584 (6th Cir. 2009) (internal quotation marks, alterations, and citations omitted). Examining the record evidence, the court held that the first and third *O'Brien* factors weighed in favor of decertification. First, the court noted the varied job duties of the opt-in plaintiffs, even within a department, and the different "exception procedures" of varying formality used to ensure compensation for work performed during meal breaks (e.g., exception logs, notes to supervisors).

The court also found that Frye failed to rebut Baptist Memorial's formal policy of compensating for all time worked with evidence of a "*de facto* policy to the contrary." Specifically, the court noted that many of the opt-in plaintiffs testified that Baptist Memorial paid them for time claimed via the exception procedures, and that it did not discourage them or retaliate against them for using the exception procedures. On the whole, the district court concluded that Frye failed to present substantial evidence of a common FLSA injury caused by Baptist Memorial's automatic-deduction pay policies. *Frye*, 2010 WL 3862591, at *3–6.

Alternatively, Frye claimed a common injury from Baptist Memorial's failure to monitor its automatic-deduction policy for FLSA violations and its inadequate training of supervisors and employees to prevent such violations from happening. Through these inadequacies, Frye claims Baptist Memorial improperly placed its burden of FLSA compliance on employees. The district court found that Frye failed to present substantial evidence that Baptist Memorial shirked its FLSA responsibilities. The court noted that the FLSA did not categorically prohibit Baptist Memorial from using an automatic-deduction policy with exception procedures. (*See* R. 373-16, Wage and Hour Div., U.S. Dep't of Labor Fact Sheet No. 53, The Health Care Industry and Hours Worked (July 2009) ("DOL Fact Sheet No. 53").) Despite Frye's evidence that Baptist Memorial offered little or no training on the automatic-deduction policy after the employees' initial training program, the court noted that "[t]he vast majority of the Plaintiffs deposed by Baptist stated that they were aware of Baptist's procedures for reporting time worked during meal breaks." *Frye*, 2010 WL 3862591, at *7 (citing record evidence that 33 of the 39 proffered opt-in plaintiffs knew of Baptist Memorial's

exception procedures).) The court further dismissed Frye's failure-to-monitor theory, finding no evidence that Baptist Memorial knew of its exception procedures' shortcomings. According to the court, apart from isolated instances of nonpayment that Baptist Memorial promptly corrected, the record supported Baptist Memorial's claim that it paid employees for time claimed via the exception procedures.

Following decertification, the district court granted Baptist Memorial summary judgment on Frye's claim, finding that he failed to file written consent to join the action within the FLSA's statute of limitations. *See* 29 U.S.C. §§ 255–56.

Frye challenges both judgments on appeal. With regard to decertification, Frye reiterates his burden-shifting theory, arguing that he presented sufficient evidence of Baptist Memorial's failure to train and monitor employees in implementing the automatic-deduction policy.[1] As for the statute of limitations, Frye argues that the FLSA does not require him to file a written consent, or alternatively that his attorney-services agreement and deposition effectively satisfies the FLSA's written-consent requirement. Frye also claims that Baptist Memorial's failure to oppose the written-consent filings of opt-in plaintiffs estops it from objecting to his failure to file a written consent.

---

[1]Frye does not challenge the district court's finding that he failed to show substantial evidence of a Baptist Memorial policy denying compensation for work performed during lunch breaks or discouraging use of the exception procedures.

II.

We review the district court's decertification order for abuse of discretion. *O'Brien*, 575 F.3d at 584. "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008).

Plaintiffs seeking to file a collective action under the FLSA must demonstrate that they are "similarly situated." 29 U.S.C. § 216(b). For FLSA collective actions, class certification typically occurs in two stages: conditional and final certification. Although we have not discussed a plaintiff's FLSA burden for final certification in much detail, we recognize that the second stage warrants "a stricter standard" than the conditional certification stage because it occurs near the end of discovery. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). Plaintiffs generally must produce "more than just allegations and affidavits" demonstrating similarity in order to achieve final certification. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (citation and internal quotation marks omitted). Courts have recognized that "the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.' Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Anderson v.*

*Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

In *O'Brien*, we tacitly approved the factors weighed by the district court in this case: employment settings, individual defenses, and the fairness and procedural impact of certification. 575 F.3d at 584 (citing 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 n.65). We held that "[t]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs," but cautioned that the FLSA's "similarly situated" standard "is less stringent" than the predominance inquiry typically applicable to class certification disputes under Federal Rule of Civil Procedure 23(b). *Id.* (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), and faulting the district court for implicitly applying Rule 23's predominance standard). We further opined that plaintiffs could demonstrate "similarly situated" circumstances by showing a common theory of FLSA violation. *Id.* at 585 (noting, however, that the FLSA did not necessarily require such a common theory).

The district court adhered to this guidance. After reviewing the record and the parties' arguments, we determine that the district court properly exercised its discretion in weighing the *O'Brien* factors and granting decertification.

The district court recognized that an automatic-deduction policy, without more, does not violate the FLSA. *See, e.g.*, DOL Fact Sheet No. 53 at 3; *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009). Frye does not dispute that point, but notes that the FLSA

requires employers to compensate employees for work "suffer[ed] or permit[ted]," *see* 29 U.S.C. §§ 203(g), 207(a)(1), including voluntary work that the employer "knows or has reason to believe" that the employee performs, *see* 29 C.F.R. §§ 785.11–785.12. Indeed, FLSA regulations recognize that

> it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. Consistent with these principles, courts relax plaintiffs' burden to show damages under the FLSA if the employer fails to keep accurate records, allowing plaintiffs to rely on an "inferential damage estimate." *O'Brien*, 575 F.3d at 602–03 (citations omitted) (noting that the relaxed burden only bears on damages and not the existence of an FLSA violation); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). Though these rules matter to the merits of plaintiffs' FLSA claims—issues we do not address here—they do not relieve plaintiffs of the FLSA's "similarly situated" class-certification requirement.

Addressing that requirement, Frye points to deposition testimony showing that some opt-in plaintiffs did not know their compensation rights with regard to interrupted meal breaks, others voluntarily declined to report work performed during their lunch breaks, and still others lunched at their workstation without realizing that it entitled them to compensation. The lengthy string citation he offers in support refers to a document excerpting various depositions, leaving for the court to

weave common factual threads. (*See* Appellants' Br. at 44–45 (citing R.373-23).) We note that some of the excerpted depositions appear to support his allegations, but others do not. One employee claims that a coworker told her not to use the exception logs, but to take the lunch break off. (R. 373-23, Dobbins Dep. at 39–40.) Another claimed that his department had no exception log. (*Id.*, Futrell Dep. at 17.) A third suggested that Baptist Memorial discouraged frequent use of the exception logs, but admitted under questioning that he never experienced problems using the exception logs and that he relied on office rumors. (*Id.*, Harding Dep. at 35–36.) At least one employee believed that interrupted meal breaks counted as non-work time. (*Id.*, Campbell Dep. at 70.) Others stated that they voluntarily avoided the exception-log procedures for convenience, or because they simply forgot. At the same time, another employee claimed that her supervisors permitted employees to report work in the exception log after-the-fact if they failed to do so contemporaneously. (*Id.*, Bates Dep. at 103; *see also* R. 373-4, Barbaree Dep. at 32–33 (stating that Baptist Memorial accepts retroactive exception log entries).) Frye attempts to expand on this proffer in his reply brief, asserting without citation that thirteen opt-ins misunderstood the compensation requirements for interrupted lunches, and also claiming that six opt-ins lunched at their workstation without pay. (Appellants' Reply Br. at 12.)

Frye's evidence, while perhaps indicative of individual FLSA violations, fails to demonstrate similarly situated plaintiffs experiencing a common FLSA injury. Apart from the handful of deposition excerpts cited, Frye leaves unrebutted the district court's quantitative finding that "the vast majority" of the proffered opt-in plaintiffs knew of Baptist Memorial's exception procedures,

were paid for time reported via the exception procedures, and were not discouraged from reporting work performed during lunch breaks. Notably, Frye does not claim that Baptist Memorial declined to compensate employees who reported lunch-break work, and he does not quarrel with the district court's finding that Baptist Memorial "promptly corrected" isolated incidences of nonpayment. He further fails to dispute Baptist Memorial's evidence that it honors late-filed exception-log claims.

At bottom, Frye's common theory of injury reduces to a critique of Baptist Memorial's use of an automatic-deduction policy. But, as we observed, an automatic-deduction policy by itself comports with the FLSA (*see* DOL Fact Sheet No. 53 at 3), and thus cannot serve as the lone point of similarity supporting class certification. And his remaining variations—differing exception logs, minimal training, lack of oversight—rely on employees' unique experiences. The absence of a common theory of FLSA violation, though not fatal to certification in *O'Brien*, *see* 575 F.3d at 584, weighs against certification here because of the dissimilarities in plaintiffs' work experiences. Frye accedes to the district court's findings under the first *O'Brien* factor that the opt-in plaintiffs had different jobs, even within a department, and that different departments used different exception procedures to ensure compensation for work performed during meal breaks. These differences overwhelm Frye's alleged similarities, which do not "extend 'beyond the mere facts of job duties and pay provisions.'" *See Anderson*, 488 F.3d at 953 (quoting *White*, 204 F. Supp. 2d at 1314); *see also O'Brien*, 575 F.3d at 586 (affirming decertification where the only opt-in plaintiff who could benefit from recertification failed to allege that she suffered from the same unlawful practices claimed by other plaintiffs).

Next, Frye argues that the voluntary failure of some employees to report work supports his failure-to-monitor theory. The district court rejected this argument on the evidence, citing *Wood v. Mid-America Management Corp.* for the proposition that "an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." 192 F. App'x 378, 380 (6th Cir. 2006) (quoting *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998)). In *Wood*, we affirmed the district court's grant of summary judgment against an employee's FLSA claim, when the self-reporting employee failed to log overtime hours despite knowing that he needed to report those hours to receive compensation. *Id.* at 380–82. We explained that "[a]n employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid." *Id.* at 381. Frye dismisses this principle as not bearing on this case because Baptist Memorial *had* reason to know that employees worked without pay during their lunch breaks. We cannot agree.

Frye relies on four employee declarations—all of them abandoned in his opposition to Baptist Memorial's motion for decertification—to show Baptist Memorial's knowledge of deficiencies with its lunch-break pay policies. Because Frye abandoned his only evidence on this point, we may treat the argument as unfounded. *See O'Brien*, 575 F.3d at 584 (noting that plaintiffs bear the burden of showing similarly situated opt-in plaintiffs); *cf. Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (explaining, in the summary judgment context, that the district court need not canvass the

record to find evidence helpful to the party bearing the burden of production). The district court did not abuse its discretion by failing to consider evidence ignored by the interested party.

Despite the gaps in his similarity showing, Frye might have saved a portion of his collective action by proposing a subset of similarly situated Baptist Memorial employees to the district court. *Cf. O'Brien*, 575 F.3d at 585–86 (suggesting that a subset of plaintiffs in that case could provide representative testimony of the FLSA violations, and instructing district courts to consider partial decertification). When presented with the chance, he failed to do so, deeming representative testimony and partial decertification unnecessary. (*See* R. 373 at 33–34.) Likewise, he makes no such effort now. The district court therefore did not err in declining partial certification.

Finally, Frye argues that cases support his burden-shifting theory, citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011), and *Brennan v. Qwest Communications International, Inc.*, 727 F. Supp. 2d 751 (D. Minn. 2010). These cases render no aid because they concerned summary judgment motions, not the "similarly situated" analysis applicable to class certification. In resolving this class certification issue, we have no occasion to consider the merits of the different plaintiffs' FLSA claims against Baptist Memorial. Moreover, Baptist Memorial concedes the principle Frye draws from those cases—that an employer may not evade FLSA liability by using burden-shifting reporting techniques. *See Kuebel*, 643 F.3d at 363 ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."); *Brennan*, 727 F. Supp.

2d at 762 ("The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet.").

We need not decide today whether a burden-shifting theory may ever support FLSA class certification. On the record presented, the district court acted well within its discretion in concluding that Frye fell short of the FLSA's similarly-situated-plaintiffs requirement.

III.

Turning to review de novo the summary judgment order, we agree with the district court that Frye did not file the necessary written consent within the FLSA's statute of limitations. An FLSA plaintiff generally has two years to file suit, but the statute of limitations increases to three years if the claim consists of a "willful violation." 29 U.S.C. § 255(a); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008). An FLSA cause of action accrues "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes*, 542 F.3d at 187 (citations omitted). To bring a collective FLSA action, a plaintiff must file a written consent to opt-in to the collective action. 29 U.S.C. § 216(b) (allowing an aggrieved employee to bring a collective FLSA action against the employer, provided that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"), *abrogated on other grounds by Alden v. Maine*, 527 U.S. 706, 759–60

(1999). For purposes of the statute of limitations, the filing of the written consent "commences" an

FLSA collective action:

> [I]n the case of a collective or class action instituted under the [FLSA], it shall be considered to be commenced in the case of any individual claimant—
>
>> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>>
>> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

Here, the parties agree that Frye received his last paycheck from Baptist Memorial on April

27, 2007, but he failed to file a written consent to collective action. Frye argues that the FLSA does

not require named plaintiffs, such as himself, to file written consents. But the plain language of

§ 256(a) does. That provision unambiguously provides that collective actions "shall be considered

to be commenced" for statute-of-limitations purposes "on the date when the complaint is filed, if he

is specifically named as a party plaintiff in the complaint *and* his written consent to become a party

plaintiff is filed on such date." *Id.* § 256(a) (emphasis added). If any doubt remains, subsection (b)

confirms the written-consent requirement by providing that an FLSA collective action commences

"on the subsequent date on which such written consent is filed." *Id.* § 256(b). Accordingly, courts

construe the above language to do what it says: require a named plaintiff in a collective action to file

a written consent to join the collective action. *E.g.*, In *re Food Lion, Inc.*, Nos. 94-2360 et al., 151

F.3d 1029, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) (per curiam, unpublished table decision); *Songu-Mbriwa v. Davis Mem'l Goodwill Indus.*, 144 F.R.D. 1, 2 (D.D.C. 1992).

Frye resists the statutory language, citing a district court decision holding that named plaintiffs need not follow the FLSA's written-consent requirement. *See Arias v. U.S. Serv. Indus., Inc.*, No. 93-2261, 1994 WL 193901, at *1 (D.D.C. May 4, 1994). That case, which did not involve a statute-of-limitations issue under § 256, cited only one authority in concluding that 29 U.S.C. § 216(b) did not require named plaintiffs to file written consents: *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir. 1984). Yet *Allen* involved plaintiffs asserting individual claims—subject to different FLSA commencement rules—rather than joining a collective action. *Id.* at 1135 ("This suit consists of a number of individual actions, not a collective or class action subject to sections [216(b)] and 256."); *see* 29 U.S.C. § 256 (providing that an individual action "shall be considered to be commenced on the date when the complaint is filed"); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978) (explaining that the written-consent requirements of §§ 216(b) and 256 apply only to representative actions). *Arias* thus does not persuade us to depart from § 256's express written-consent requirement for collective actions.

Alternatively, Frye claims that we should excuse his claim from the written-consent requirement, *see* 29 U.S.C. § 256, because the district court decertified the action. Frye contends that the district court's decertification order acted as an amended pleading, converting this action into an individual claim. Noting that Frye filed the action as a "collective action" under the FLSA

(elsewhere referring to his claim as a "Representative Action" for FLSA violations "on behalf of [named plaintiffs] and all others similarly situated"), the district court rejected this theory. (*See* Compl. caption and preamble, ¶¶ 1, 15.) Frye's Complaint unambiguously signaled his intent to pursue a collective action under the FLSA; he needed to comply with the FLSA's written-consent requirement within the statute of limitations.

Anticipating as much, Frye submits that certain conduct discharged his written-consent obligation: (1) hiring counsel to file a collective action on his behalf; (2) filing a complaint as a class representative; and (3) appearing for a deposition. After all, Frye notes, the FLSA does not specify the form of written consent. *See, e.g.*, *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 736 n.11 (1981) (noting that, if § 216(b) applied to a nonclass action, individually signed interrogatories satisfied the written consent requirement); *Brown v. Dunbar & Sullivan Dredging Co.*, 189 F.2d 871, 873–74 (2d Cir. 1951) (finding that retainer agreements, titled "consents of employees to become party plaintiffs" and filed with the amended complaint, satisfied the written-consent requirement). But even allowing latitude of form, the requirement remains a *filed written consent*. First, even if it could be considered his filing, the unsigned deposition testimony filed by Baptist Memorial does not constitute Frye's written consent. Second, he filed the retainer agreement well after the expiration of the FLSA's two- and three-year statutes of limitations. (R. 400-2 (filed December 10, 2010).) Because paragraphs (a) and (b) of § 256 base the "commencement" of an FLSA collective action on the filing of written consent, subsequent written consents do not relate back to the filing of a complaint for purposes of the statute of limitations. *Lee v. Vance Exec. Prot.,*

*Inc.*, 7 F. App'x 160, 167 (4th Cir. 2001); *Songu-Mbriwa*, 144 F.R.D. at 2; *Kuhn v. Phila. Elec. Co.*, 487 F. Supp. 974, 975–77 (E.D. Pa. 1980), *aff'd*, 745 F.2d 47 (3d Cir. 1984). And third, the filing of a collective action complaint signed by his attorney cannot satisfy the FLSA's written-consent requirement. *See Kulik v. Superior Pipe Specialties Co.*, 203 F. Supp. 938, 941 (N.D. Ill. 1962) (concluding that an FLSA written consent "is a document signed by the person whose consent it purports to be").

Finally, Frye argues that Baptist Memorial should be equitably estopped from asserting a statute-of-limitations defense because it did not object to the written consents filed by the opt-in plaintiffs and it did not oppose Frye's attempt to serve as a class representative. He presents no authority for this position. The record reflects that Baptist Memorial properly pleaded this affirmative defense in its answer and raised it in a motion for summary judgment. We find no grounds for estoppel.

"Redundant though it may seem to require consents from the named plaintiffs in a class action," the FLSA's mandate is clear. *In re Food Lion, Inc.*, 1998 WL 322682, at *13. Frye did not file a written consent within the FLSA's two- and three-year statutes of limitations.[2]

---

[2]Even if Frye had filed his written consent during the time Baptist's summary judgment motion was stayed, which would fall within the three-year statute of limitations, we agree with the district court's conclusion that Frye has not presented a willful violation of the FLSA. *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2011 WL 1595458, at *8–11 (W.D. Tenn. Apr. 27, 2011).

No. 11-5648
*Frye v. Baptist Mem'l Hosp., Inc.*

IV.

We affirm.